1  CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

2

MARTHA BOERSCH (CABN 126569)
3  Chief, Criminal Division

4  EMILY R. DAHLKE (CABN 322196)
Assistant United States Attorney

5

    1301 Clay Street, Suite 340S
6   Oakland, California 94612
    Telephone: (510) 637-3680
7   FAX: (510) 637-3724
    Emily.Dahlke@usdoj.gov

8

Attorneys for United States of America
9

                    UNITED STATES DISTRICT COURT
10

                  NORTHERN DISTRICT OF CALIFORNIA
11

                          OAKLAND DIVISION
12

13  UNITED STATES OF AMERICA,          )  Case No. 4:25-MJ-71447-MAG
                                       )
14        Plaintiff,                   )  **UNITED STATES' MEMORANDUM IN**
                                       )  **SUPPORT OF DETENTION**
15    v.                               )
                                       )
16  JORDAN COOK,                       )
                                       )
17        Defendant.                   )
                                       )
    _____)
18

19                          **INTRODUCTION**

20        Jordan Cook conspired with her boyfriend, Larue Henderson, and other co-conspirators to

21  violently rob marijuana delivery drivers at gunpoint, carjack them, steal their marijuana and cash, and

22  sell the stolen marijuana for profit. In total, the scheme encompassed six armed robberies and

23  carjackings from January 19, 2025, through April 22, 2025. On May 13, 2025, law enforcement

24  searched Cook and Henderson's residence and recovered a loaded firearm in their bedroom. DNA

25  results showed very strong support that Cook's DNA was on the loaded firearm, including the trigger

26  and magazine. Cook is a felon and prohibited from possessing firearms, she also has a number of prior

27  juvenile arrests. Cook participated in a scheme that resulted in six separate dangerous and violent armed

28  robberies and carjackings. She poses a serious danger to the community and must be detained until trial.

UNITED STATES' DETENTION MEMO          1
4:25-MJ-71447-MAG

1
## BACKGROUND

2
### A. Overview of the Conspiracy

3
Beginning in January of 2025 and continuing through April of 2025, a series of six violent armed

4
robberies and carjackings occurred in the East Bay. The robberies all followed a unique modus operandi.

5
Cook and her co-defendant boyfriend, Henderson, conspired together with at least one other individual,

6
to lure marijuana delivery drivers to secluded areas using fraudulent customer accounts on various

7
marijuana delivery apps. The scheme involved impersonating a customer in order to place a delivery

8
order for marijuana products, for delivery in San Leandro, Berkeley, or Hayward. The requested

9
delivery time was usually in the evening and the delivery location was often in areas that were difficult

10
for the victim to exit quickly (such as dead-ends or narrow one-way roads).  The unwitting delivery

11
drivers would arrive to the delivery location with the marijuana products. When they arrived at the

12
location, Henderson and sometimes another co-conspirator, forced the victim out of their car at

13
gunpoint. In some instances, the victims were threatened that they would be shot or killed if they did not

14
comply. At least two victims were physically struck during the course of the robbery and carjacking.  In

15
other instances, the victim was forced to lay on the street while Henderson and the other co-conspirators

16
stole their vehicle, including all the marijuana inside the vehicle, the victim's cash, cell-phone, and in

17
some cases, their identification.

18
Throughout the time period of the robberies and carjackings, Cook and Henderson advertised

19
marijuana for sale. A month after the last robbery, law enforcement searched Cook and Henderson's

20
apartment. Inside the apartment, law enforcement found nearly $10,000 worth of commercially

21
packaged marijuana products (including marijuana that was the same brand as marijuana products stolen

22
from one of the victim's) and a loaded firearm.

23
### B. Cook Lures the Victim to the Armed Robbery and Carjacking on January 19, 2025

24
Cook played a critical role in the conspiracy. For example, during the first robbery and

25
carjacking on January 19, 2025, the victim was robbed at gunpoint by two males. Moments before being

26
robbed and carjacked, the victim said that he talked to the "customer" who ordered the marijuana

27
products through a mobile app. The "customer" was a woman who told the victim to stay in his car

28
because she had kids in her apartment and did not want him coming up. As the victim attempted to make

UNITED STATES' DETENTION MEMO                2
4:25-MJ-71447-MAG

the delivery, Henderson and another man came up to him and put a pistol to his stomach, robbing him of marijuana products, two cellphones and the keys to his vehicle. They stole his vehicle which contained $3,500, as well as marijuana products valued at $15,000 and his passport.

Berkeley Police Department ("BPD") discovered text messages on Cook's phone that were sent to Henderson the night of the January 19, 2025, robbery, around the time of the robbery. Cook texted Henderson "it says driver arriving", to which Henderson responded "Bet". Two minutes later Cook texted Henderson, "he's calling back" (the driver reported talking to a woman). She then texted Henderson "he's there". Photos on Cook's phone showed that the day after the robbery, Cook advertised marijuana products for sale.

  

Additionally, Henderson committed an armed robbery and carjacking of a marijuana delivery driver on March 5, 2025. Shortly after that robbery, Cook texted with an individual about selling them marijuana products saying, "I got hella flavors".

**C. Cook Lures the Victim to the Armed Robbery and Carjacking on April 11, 2025**

Similarly, on April 11, 2025, Cook lured another victim to the crime scene. On April 11, 2025, a "customer" using an identity with the initials "T.H." placed an order for marijuana products. The customer who placed the order had a female voice and the customer identity for the account was a distinct photograph of a woman holding an ID card with the name that had the initials "T.H." . The company dispatched the victim to make the delivery. The delivery location was 24 Virginia Gardens in

1    Berkeley. While waiting for the customer to retrieve the product from the car, the victim was robbed and

2    carjacked at gun point. He was ordered out of his car while a gun was pointed at his head. Henderson

3    robbed the victim of his belongings, including the marijuana products the victim was to deliver, and then

4    fled in the victim's vehicle.

5          When BPD searched Cook's devices a month after the robbery, they discovered an internet

6    search entitled "photos of people holding ID". On April 4, 2025, Cook and Henderson exchanged text

7    messages about altered photographs of people holding ID cards. On April 5, 2025, Henderson sent an

8    image to Cook asking "passable?" Cook responded "u can tell it's hella animated." Henderson replied

9    with an altered image saying "better" to which Cook replied "the hair is off asf [as fuck]". Also found on

10   Cook's phone was the same photograph of a person holding an ID card with the "T.H." name, that was

11   used to initiate the marijuana order on April 11, 2025. Law enforcement also found screenshots of the

12   street-view and map area of 24 Virginia Gardens (the April 11, 2025 crime scene) that were taken

13   approximately 30 minutes prior to the armed robbery and carjacking on April 11, 2025.

14   **D. The Gun Possessed by Cook was Used in a Shooting on March 20, 2025**

15         On March 20, 2025, a victim was shot in the arm after he drove away from an attempted

16   carjacking.



1    The victim (who possessed a significant amount of marijuana in his car) was sitting in his car in Oakland

2    when someone tried to break his car window. He quickly drove away, and as he was leaving, he was

3    shot once in the arm, through the driver's side window (*see* above). He was treated at the hospital for his

4    injuries.

5         Henderson, Cook's defendant's, phone was in the area of the shooting approximately five

6    minutes before the shooting occurred. An eye-witness said she saw two young black males hiding

7    behind cars on the sidewalk near where the shooting took place. She also saw a young black woman

8    who was with the two men, and that they all left the scene quickly after the shooting.

9         When law enforcement searched Cook and Henderson's residence in May of 2025, they

10   recovered a firearm. DNA testing revealed strong support that both Henderson and Cook's DNA was on

11   multiple areas of the firearm, including the trigger and magazine. Information from the National

12   Integrated Ballistic Information Network ("NBIN") revealed that the firearm recovered from Cook and

13   Henderson's apartment was the firearm that was used to shoot the victim in the arm on March 20, 2025,

14   in Oakland. As discussed, Cook is prohibited from possessing firearms because she has a prior felony

15   conviction.

16                                        **LEGAL STANDARD**

17        Under the Bail Reform Act of 1984, the Court must detain a defendant before trial without bail

18   where "the judicial officer finds that no condition or combination of conditions will reasonably assure

19   the appearance of the person as required and the safety of any other person in the community." 18

20   U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or

21   a serious flight risk; the government need not prove that both factors are present. *United States v.*

22   *Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the

23   community must be supported by clear and convincing evidence. *Id.* A finding that a defendant is a

24   flight risk need only be supported by a preponderance of the evidence. *Id.* The rules concerning

25   admissibility of evidence in criminal trials do not apply to a detention hearing. 18 U.S.C.

26   § 3142(f)(2)(B).

27        "[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated

28   in [18 U.S.C.] § 3142(g)." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019).

UNITED STATES' DETENTION MEMO                        5
4:25-MJ-71447-MAG

1 Those factors are: (i) the nature and circumstances of the offense charged; (ii) the weight of the evidence

2 against the defendant; (iii) the history and characteristics of the defendant, including the defendant's

3 character, physical and mental condition, family and community ties, past conduct, history relating to

4 drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well

5 as whether the crime was committed while the defendant was on probation or parole; and (iv) the nature

6 and seriousness of the danger to any person or to the community that would be posed by the defendant's

7 release.  *See* 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

8 <u>**ARGUMENT**</u>

9 **A. Cook Was Instrumental in the Commission of Multiple Violent Armed Robberies and**

10 **Carjackings**

11 Cook was an integral part of a dangerous and violent conspiracy. She assisted in the planning of

12 the robberies and carjackings, helped create fake customer identification profiles, and lured delivery

13 drivers to the delivery location, intending for them to be robbed and carjacked at gunpoint. She then

14 helped sell the stolen marijuana after the robberies. Her DNA was on a firearm (including the trigger and

15 magazine) that less than two months earlier was used to shoot a victim in the arm, after a failed

16 carjacking attempt in Oakland. She is prohibited from possessing firearms, but did so anyway. When

17 law enforcement asked her about the firearm, she denied knowledge of it, even though the gun was in

18 her bedroom and her DNA was on the firearm.

19 **B. There is Clear and Convincing Evidence that Cook Presents a Danger to the**

20 **Community**

21 The nature and circumstances of the conspiracy demonstrate that Cook helped orchestrate a

22 sophisticated and complex series of armed robberies and carjackings. These violent incidents put six

23 victims in very real fear of harm and even death. The armed robberies and carjackings were carried out

24 over a period of several months. Cook was integral to the commission of these robberies and

25 carjackings. In addition to her felony criminal record, her conduct in this case speaks to her character

26 and mental condition – that she is willing to organize dangerous crimes, lure innocent victims to be

27 violently robbed and carjacked at gunpoint and use other people to achieve her criminal objectives.  The

28 crimes show a fundamental disregard for the welfare and safety of the public.

1    While each bail determination requires an individual analysis specific to the defendant in front of

2    the Court, magistrate judges in this district have routinely detained defendants who committed similar

3    crimes, with personal characteristics similar to Cook. *See United States v. Landry*, No.

4    CR1370716MAG1KAW, 2013 WL 3762260, at *1 (N.D. Cal. July 16, 2013) (22-year old defendant

5    charged with Hobbs Act Robbery and Conspiracy detained) ; *United States v. Harris, 732 F. Supp. 1027*

6    *(N.D. Cal. 1990; United States v. Lopez, No. CR 12-70846 MAG KAW, 2012 WL 3655246, at *2 (N.D.*

7    *Cal. Aug. 24, 2012)* (defendant who committed seven bank robberies over six week period detained as

8    danger to the community); *United States v. Morton*, No. 12-00537 CW DMR, 2012 WL 2952419, at *1

9    (N.D. Cal. July 17, 2012) (22-year old defendant charged with three bank robberies presented risk of

10   danger to the community that could not be mitigated); U*nited States v. Williams,* No. CR 12-0600 PJH

11   KAW, 2012 WL 3638646, at *2 (N.D. Cal. Aug. 22, 2012) (robbing nine banks, some at gunpoint,

12   raised significant possibility that defendant would pose an unmitigable danger to the community);

13   *United States v. Medrano*, No. 24-CR-00226-BLF-5, 2024 WL 3048560, at *4 (N.D. Cal. June 17,

14   2024) (defendant who participated in robbery in furtherance of a RICO posed public safety risk that

15   could not be mitigated by living out of district with custodian, as "acts violence can happen in any

16   location, at any time").

17   In *United States v. Moore*, the Honorable Kandis A. Westmore acknowledged the Defendant's

18   considerable ties to the district as well as his strong family support and desire to donate his kidney to his

19   ailing father, but still found that Defendant posed too serious a danger to the community to be released.

20   *United States v. Moore*, No. CR-11-0905 SBA-2, 2013 WL 1365954, at *2 (N.D. Cal. Apr. 3, 2013).

21   Specifically, Judge Westmore found that the defendant "was on the phone with a co-defendant the entire

22   time that the codefendant was inside the bank committing the robbery. Although Defendant did not

23   personally brandish a gun, he actively participated in the crime and helped his co-defendant use the gun

24   to commit the robbery. This shows that he poses a danger to the community." *United States v. Moore*,

25   No. CR-11-0905 SBA-2, 2013 WL 1365954, at *2 (N.D. Cal. Apr. 3, 2013).

26   Similarly, in a Hobbs Act conspiracy case, *United States v. Davis*, Judge Westmore ordered a 20-

27   year old defendant who had a "short" criminal history, strong ties to the community and family support

28   detained, finding that "the nature and circumstances of the instant offense involve a relatively complex

1  conspiracy between Defendant and others to lure a victim who posted jewelry for sale on Craigslist to

2  Oakland for the purposes of robbing her at gunpoint—a violent crime." No. CR-14-00093-JSW-2, 2014

3  WL 794182, at *3 (N.D. Cal. Feb. 24, 2014).

4  **C. Cook's Criminal History**

5  This case is not Cook's first brush with the law. She has the following juvenile arrests: April 14,

6  2013 (battery); October 13, 2013 (battery); February 11, 2014 (battery); and July 28, 2014 (vandalism

7  and battery). She was arrested as an adult on December 28, 2020 (grand theft, conspiracy, organized

8  retail theft) and was later convicted of felony Second Degree Burglary on June 14, 2021. She was

9  sentenced to 90 days in jail and two years of probation.

10  **D. The Proposed Release Conditions are Inadequate to Protect the Public**

11  The pre-trial bail study notes a number of aggravating factors, including the nature and

12  circumstances of the offense, Cook's mental health history, Cook's history of violent behavior, and her

13  daily alcohol and drug use. The proposed release conditions do not adequately account for these

14  aggravating conditions and the danger Cook poses. She has poor mental health and limited social

15  support. Her employment status is also ambiguous.

16  **CONCLUSION**

17  For all the reasons stated above, Cook poses a danger to the community that cannot be mitigated

18  by conditions of release. The government respectfully requests that the Court detain Cook pending trial.

19  If the Court is inclined to release Cook, it should impose stringent conditions that provide greater

20  restriction on Cook's ability to commit new crimes, including releasing Cook to a custodian and placing

21  her on home detention.

23  DATED: December 10, 2025

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

*/s/ Emily R. Dahlke*
EMILY R. DAHLKE
Assistant United States Attorney